**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240012-U

Order filed March 11, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0012 Circuit No. 21-CM-130 |
| | ) | |
| TERENCE T. HUDSON, | ) ) | Honorable Paul A. Marchese, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Davenport and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   Defendant did not receive ineffective assistance of counsel due to counsel's failure to challenge certain jurors. Defendant did not establish plain error regarding the allegedly biased jurors. The court did not commit reversible error by allowing the State's witnesses to refer to a physical altercation.

¶ 2      Defendant, Terence T. Hudson, appeals his convictions. Defendant argues that he received ineffective assistance of counsel because counsel failed to challenge three allegedly biased jurors. Defendant further argues that there is second prong plain error because he was tried by a biased jury. Lastly, defendant argues that the court erred by allowing the State's

witnesses to refer to a physical altercation rather than a disturbance, which he alleges was prejudicial. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4         The State charged defendant with two counts of battery (720 ILCS 5/12-3(a)(1), (a)(2) (West 2020)), driving while license suspended (625 ILCS 5/6-303(a) (West 2020)), fleeing or attempting to elude a police officer (*id.* § 11-204(a)) and disobeying a stop sign (*id.* § 11-1204(b)). The battery charges were severed from the rest of the charges and later *nolle prossed*.

¶ 5         The charges stemmed from a physical altercation at a hotel on January 24, 2021. Defendant was involved in the altercation and fled. Prior to trial, the State filed a motion *in limine* seeking to introduce evidence of the altercation in order to establish defendant's motive and lack of mistake. The State also argued that evidence regarding the altercation was admissible as part of a continuing narrative giving rise to the offenses with which he was charged. The court partially granted the motion, allowing the State to introduce evidence of the physical altercation that gave rise to the police response and defendant's alleged flight, but barred the State from introducing the specifics of the alleged batteries.

¶ 6         The matter proceeded to a jury trial with a six-person jury. During *voir dire*, all jurors indicated that they understood and accepted the four principles set forth in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). All jurors answered affirmatively when the court asked if they would be able to refrain from giving police officers more credibility or believability simply because they were police officers. Additionally, they all expressed that they would be able to give both sides a fair trial. Defense counsel asked the jurors what they would do if neither the State nor the defense put on any evidence. Juror 19 indicated it would be difficult, and she would talk with the other jurors but would not automatically agree to a guilty verdict. Juror 51 also

2

expressed that it would be difficult. Juror 115 stated he could not come to a decision without seeing the evidence and hearing both sides of the story. Defense counsel then asked the jurors if they could get to a guilty verdict with no evidence. Juror 19 indicated that she trusted law enforcement but noted that having the evidence is a crucial part. Juror 51 stated that "if there is no evidence, I trust the law enforcement for that one if there is no other evidence" given. She further indicated she would listen to the other jurors to come to a decision. Juror 115 stated that he supported law enforcement and "obviously, there was a crime committed," but that it would be difficult "without collectively talking to the group how we would come up with a verdict."

¶ 7        Defense counsel asked the jurors if the police are always right and whether the police should be given more deference. Juror 115 noted that he supported law enforcement but that they are not always right. He also stated that the police could "possibly" be entitled to a little more deference in comparison to other witnesses. Defense counsel asked the jurors if the State proved almost every element of the crime but did not prove one of the elements, how would they vote. Jurors 19 and 51 responded that they would need to talk with the other jurors. Defense counsel accepted the panel of jurors without using peremptory challenges or challenging any of the jurors for cause.

¶ 8        Prior to the start of testimony, and outside the presence of the jury, defense counsel asked the court whether the State would be allowed to use the phrase "physical altercation." Defense counsel also suggested the use of the term disturbance. The court advised that it had already ruled that the State could use the phrase physical altercation.

¶ 9        Victoria Malcolm testified that she worked at the hotel on January 24, 2021. There was a disturbance between guests of the hotel. She, as the manager, went to see what was happening and intervened. A physical altercation ensued and as a result, the police were called. Malcolm

3

identified defendant as being involved in the altercation. Defendant left when the police were called.

¶ 10     Isa Morales testified that she was working at the hotel as a front desk clerk on January 24, 2021. She was aware that defendant was a resident of the hotel. The police were called to the hotel as a result of a disturbance involving defendant. Morales provided the police with a copy of defendant's driver's license. Morales observed defendant exiting the hotel towards the parking lot and advised the police which exit he left through.

¶ 11     Officer Ben Sylejmani testified that he responded to a call of a disturbance at the hotel on January 24, 2021. The front desk clerk informed him that defendant got into a black Toyota on the north side of the hotel. Sylejmani went to the north side of the parking lot and heard a vehicle accelerating at a high rate of speed. The vehicle was a black Toyota. He turned on his flashlight and was able to see the sole occupant of the black Toyota in the driver's seat. Sylejmani identified the driver as defendant. There were no other vehicles in motion in the parking lot. No one else was in the vehicle and defendant was in sole control of the vehicle. Sylejmani testified that there was nothing obstructing his view of the driver and he was clearly able to see the driver of the vehicle. He was approximately 15 to 20 feet away from the vehicle. Sylejmani immediately radioed a description of the vehicle and the license plate number to other officers in the area. The vehicle left the hotel parking lot and Sylejmani did not pursue it. Sylejmani returned to the hotel to continue his investigation. Hotel staff provided him with a copy of defendant's driver's license. The State entered defendant's driver's abstract from the Secretary of State into evidence. Sylejmani testified that it showed that defendant's license was suspended on January 24, 2021.

¶ 12        Officer Rolando Padilla testified that he responded to a call from the hotel on January 24, 2021. He was told over the radio by Sylejmani that the suspect had gotten into a black Toyota sedan. Sylejmani provided the license plate number. Less than a minute after receiving the information, Padilla observed a vehicle matching the description leaving the hotel parking lot. Padilla testified that he attempted to execute a traffic stop by activating his overhead lights and trying to pull in front of the vehicle to block its path. He was unsuccessful and the vehicle drove around his patrol car. When the vehicle drove around him he was able to get a good look at the driver. The driver stared at him and they made eye contact. Padilla identified defendant as the driver. At the time defendant drove around Padilla's car, defendant was within two feet of Padilla. Padilla turned his car around and attempted to catch up to defendant. Defendant drove away at a high rate of speed. He went through an intersection with a stop sign but did not stop at the stop sign. Padilla testified that there is a clearly marked line on the street where vehicles are supposed to stop in obedience of the stop sign. The State entered into evidence the dash camera footage from Padilla's squad car. The footage was played for the jury. It shows the black vehicle driving around Padilla's squad car. It is possible to see that the squad car lights are on, as there are blue and red flashing lights visible. The footage also shows the black vehicle driving away and the intersection with the stop sign that Padilla described in his testimony.

¶ 13        Defendant did not present any evidence. The jury found defendant guilty. Defendant filed a motion for new trial. The motion alleged that the court erred by allowing the State to introduce evidence of the physical altercation that gave rise to the police response to the hotel, which was severely prejudicial to defendant. The court denied the motion. The court sentenced defendant to concurrent sentences of 220 days in jail. Defendant appeals.

¶ 14                                    II. ANALYSIS

¶ 15                    A. Ineffective Assistance of Counsel and Juror Bias

¶ 16          Defendant first argues that he received ineffective assistance of counsel due to counsel's failure to either utilize peremptory challenges or challenge for cause jurors 19, 51, and 115, who defendant alleges were biased. Defendant argues that he does not need to show prejudice by showing a reasonable probability of a different outcome because a trial before a biased jury is structural error and prejudice is presumed.

¶ 17          "To establish a claim of ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice." *People v. Smith*, 195 Ill. 2d 179, 187-88 (2000). "Counsel's performance is measured by an objective standard of competence under prevailing professional norms." *Id.* at 188. "To show actual prejudice, defendant must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v. Horton*, 143 Ill. 2d 11, 23 (1991) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "[C]ounsel's conduct during jury *voir dire* involves matters of trial strategy that generally are not subject to scrutiny under *Strickland*." *People v. Metcalfe*, 202 Ill. 2d 544, 562 (2002). "Errors in trial strategy do not constitute ineffective assistance unless ' "counsel entirely fails to conduct any meaningful adversarial testing." ' " *People v. Custer*, 2019 IL 123339, ¶ 39 (quoting *People v. West*, 187 Ill. 2d 418, 432-33 (1999) (quoting *People v. Guest*, 166 Ill. 2d 381, 394 (1995))).

¶ 18          Defendant argues, citing to the United States Supreme Court case *Weaver v. Massachusetts*, 582 U.S. 286 (2017), that prejudice should be presumed in this matter because trial before a biased jury is structural error. However, the *Weaver* court did not hold that

                                              6

prejudice is presumed for claims of ineffective assistance of counsel involving structural error. More importantly, our supreme court has explicitly rejected such an argument and held that in cases involving claims of ineffective assistance for failing to challenge a biased juror, a defendant must prove prejudice, as articulated in *Strickland*, from such failure. See *People v. Manning*, 241 Ill. 2d 319, 333 (2011); *Metcalfe*, 202 Ill. 2d at 560-61. Defendant has wholly failed to argue that prejudice has been established under *Strickland* by failing to make any argument that there is a reasonable probability that the outcome of his trial would have been different had counsel challenged jurors, 19, 51, and 115. Regardless, any such argument would fail as "the evidence was more than sufficient to prove defendant guilty beyond a reasonable doubt." *Metcalfe*, 202 Ill. 2d at 562. Two officers testified to observing defendant driving. Defendant's driving abstract showed his license was suspended at that time. Dashcam footage, while not clearly showing defendant as the driver, corroborated one officer's testimony regarding defendant driving around him and failing to stop at a stop sign. There was no contradictory or inconsistent evidence. Thus, there is no reasonable probability that the outcome of the trial would have been different if jurors 19, 51, and 115 would have been removed.

¶ 19 Defendant also argued in his reply brief that the court committed plain error by allowing trial before a biased jury. However, defense counsel did not challenge any jurors, and the court has no *sua sponte* duty to strike jurors. *Id.* at 557. Thus, the court did not commit plain error. *Id.*

¶ 20 Additionally, we note that our review of the entirety of the *voir dire* examination does not reveal that jurors 19, 51, and 115 were biased as alleged by defendant. See *People v. Buss*, 187 Ill. 2d 144, 187 (1999) (providing that a juror's *voir dire* examination must be considered in its entirety). None of these jurors indicated that they did not accept or understand the principles set forth in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). All of these jurors indicated they

would be able to give both sides a fair trial. All jurors indicated they would be able to not find police officers more credible or believable simply because they were police officers. Although one juror stated that he would possibly give more deference to a police officer, at most this would be an equivocal statement. See *Buss*, 187 Ill. 2d at 187 ("While a prospective juror may be removed for cause when that person's 'views would prevent or substantially impair the performance of his duties as a juror' [citation] an equivocal response does not require that a juror be excused for cause [citation]."). Additionally, none of the jurors stated they would convict defendant in response to defense counsel's confusing hypothetical questions. Instead, in light of questions regarding deciding the case when neither side presents evidence or when the State fails to prove an element of the case, these jurors essentially responded that it would be difficult, and they would need to speak with the other jurors.

¶ 21          In sum, defendant has failed to establish prejudice from defense counsel's failure to challenge jurors 19, 51, and 115, the court did not commit plain error by failing to *sua sponte* remove those jurors, and the record does not support defendant's allegation that those jurors were biased.

¶ 22                              B. Evidence of a Physical Altercation

¶ 23          Defendant argues that the court erred by allowing a State's witness to refer to the disturbance at the hotel as a physical altercation because it was prejudicial and irrelevant to the charges defendant faced. The State argues that defendant forfeited this issue as, on appeal, defendant only challenges the phrasing utilized and not the introduction of evidence regarding an altercation. The State also argues that the court did not err.

¶ 24          As to the forfeiture argument, we conclude that although defendant may have objected to the introduction of evidence regarding the physical altercation in various ways in the circuit court

8

that may differ slightly from the issue raised on appeal, he objected to the State's motion *in limine*, raised an issue regarding the use of the term physical altercation just prior to trial starting, and argued, in his motion for new trial, that the introduction of evidence of the physical altercation was prejudicial. We believe that these efforts sufficiently raised the issue in the trial court to avoid forfeiture and we will therefore address the issue on the merits. See *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009) ("An issue raised by a litigant on appeal does not have to be identical to the objection raised at trial, and we will not find that a claim has been forfeited when it is clear that the trial court had the opportunity to review the same essential claim.").

¶ 25       "Evidentiary rulings are within the sound discretion of the trial court and will not be disturbed on review unless the trial court has abused its discretion." *People v. Boclair*, 129 Ill. 2d 458, 476 (1989). An abuse of discretion exists when the court's decision is arbitrary, fanciful or unreasonable or when no reasonable person would take the position of the circuit court. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). Generally, relevant evidence is admissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ***." Ill. R. Evid. 403 (eff. Jan. 1, 2011). "The question is not whether relevant evidence is more prejudicial than probative; instead, relevant evidence is inadmissible only if the prejudicial effect of admitting that evidence *substantially outweighs* any probative value." (Emphasis in original.) *People v. Pelo*, 404 Ill. App. 3d 839, 867 (2010). The prejudicial effect "means that the evidence in question will somehow cast a negative light upon a defendant for reasons that have nothing to do with the case on trial." *Id.* Evidence of other bad acts is

generally inadmissible to show a defendant's propensity to commit bad acts but it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Such evidence is also "admissible if it is part of a continuing narrative of the event giving rise to the offense, intertwined with the charged offense, or explains an aspect of the charge which would otherwise be implausible or inexplicable." *People v. Patterson*, 2013 IL App (4th) 120287, ¶ 58.

¶ 26    We conclude that the court did not abuse its discretion in allowing the State's witness to describe the disturbance as a physical altercation. This information was admitted in order to show why defendant would be driving despite his license being suspended and also why he would flee the officer and fail to stop at a stop sign. Additionally, it could show a lack of mistake by defendant when he drove around the officer and fled. Lastly, it was relevant as part of the continuing narrative of the event giving rise to defendant's driving while his license was suspended, fleeing officers, and failing to obey a stop sign. It also explained the police presence at the hotel. Therefore, there were multiple proper purposes for the information to be admitted. Further, the phrasing utilized was not overly prejudicial or inflammatory but instead was a generic description. No details of the altercation were admitted. As such, we cannot say that any prejudicial effect of allowing the witness to refer to the disturbance as a physical altercation substantially outweighed its probative value.

¶ 27                                III. CONCLUSION

¶ 28    The judgment of the circuit court of Du Page County is affirmed.

¶ 29    Affirmed.